UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MIRANDOLINA DUARTE and ) <br> CARLOS FERREIRA ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> DITECH FINANCIAL LLC and ) <br> FEDERAL NATIONAL ) <br> MORTGAGE ASSOCIATION ) <br> ) <br> Defendants. ) | **ORAL ARGUMENT REQUESTED**[1] <br><br> Civil Action No. 1:17-cv-00115 |

**DEFENDANTS' MOTION TO DISMISS**
**(Memorandum of Law Incorporated)**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Ditech Financial LLC ("Ditech") and Federal National Mortgage Association ("Fannie Mae," together the "Defendants") move to dismiss the action filed by Plaintiffs Mirandolina Duarte and Carlos Ferreira (the "Plaintiffs").

**INTRODUCTION**

This is a post-foreclosure challenge by the Plaintiffs, former owners of an investment property located at 190 Vincent Avenue, North Providence, Rhode Island (the "Property"), seeking to invalid a previously completed foreclosure by Fannie Mae and subsequent transfer of the Property to Ditech. Plaintiffs concede that they defaulted under the terms of their loan but claim that Fannie Mae failed to complete a "face-to-face" interview with Plaintiffs, which was a condition precedent to acceleration and foreclosure ("Face to Face Meeting Challenge") and, therefore, the foreclosure was invalid. Based on the Face to Face Meeting Challenge, Plaintiffs assert claims for Breach of Duty of Good Faith and Reasonable Diligence (Count II), Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing (Count III), and Violation of

---

[1] Defendants anticipate oral argument to take no more than an hour.

1

Rhode Island's Deceptive Trade Practices Act, R.I.G.L. § 6-13 ("DTPA") (Count IV).  Plaintiffs also allege that even if Fannie Mae had the "face-to-face" interview, it lacked "authority or power of attorney from the note-holder 'Lender' Ginnie Mae" to exercise the statutory power of sale resulting in an invalid foreclosure ("Lack of Authority Challenge").  Based on the Lack of Authority Challenge, Plaintiffs seek a declaration that the foreclosure is void and damages for "wrongful foreclosure" (Declaratory Judgment and Injunctive Relief Violation of R.I.G.L. 34-11-34 (Count I).).

The Plaintiffs' claims all fail as a matter of law.  Specifically:

**Face-to-Face Meeting Challenge**: (Counts II, III and IV).  The claims based upon the Face to Face Meeting Challenge fail because Ditech, on behalf of Fannie Mae, made "reasonable efforts" as required by the regulations to have a face to face meeting with Plaintiffs and knew that Plaintiffs were not residing at the Property.  Moreover, even if Defendants failed to make reasonable efforts to have a face to face meeting, the claims for breach of duty and covenant of good faith and fair dealing fail because there is no stand-alone claim for breach of the covenant of good faith and fair dealing under Rhode Island law, nor any "duty of good faith and reasonable diligence" implied in the regulation.  Further, the DTPA claim fails because the statute applies only to persons who purchase or lease "goods or services," and a mortgage loan is not a "good" or "service" as defined by the statute.  Moreover, Defendants are exempt from the DTPA because they are regulated by federal agencies.

**Lack of Authority Challenge** (Count I).  This claim fails because there is neither a statutory nor common law obligation to file a power of attorney to foreclose.  The specific statute relied upon by Plaintiffs only requires an attorney to file a power of attorney when signing a

deed. As a result, the alleged failure to comply with the statute does not invalidate the foreclosure.

## FACTS ALLEGED IN THE COMPLAINT

On May 2, 2008, Carlos Ferreira and Mirandolina Duarte signed a "FHA" note payable to NE Moves Mortgage LLC in the principal amount of $300,287 (the "Note") and a mortgage granting Mortgage Electronic Registration Systems Inc. ("MERS") as nominee for NE Moves Mortgage LLC (the "Mortgage"), a security interest in the Property. (Complaint ("Comp.") at ¶¶ 32 – 34); Note and Mortgage, a copies of which are attached as **Exhibit A**.

The "standard" FHA Mortgage signed by the Plaintiffs required, among other things, the mortgagee to have a "face-to-face interview with the mortgagor or make a reasonable effort to arrange such a meeting before three full monthly installments due on the mortgage are unpaid." (Comp. at ¶¶ 26, 27; Mortgage at 9(d) ("Regulations of HUD Secretary. In many circumstances, regulations issued by the Secretary will limit Lender's rights in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.").

By assignment dated April 9, 2014, MERS transferred its rights in the Mortgage to Fannie Mae. (Comp. at ¶ 37; Assignment, a copy of which is attached as **Exhibit B**). Plaintiffs claim that Fannie Mae retained Ditech to service the loan, but that the "note" "was pooled, sold and otherwise transferred to Ginnie Mae, who is in fact the Lender and holder of the note." (Comp. at ¶¶ 35, 36, 38.)

After MERS transferred the Mortgage to Fannie Mae, Ditech:

- issued a letter dated May 5, 2014, representing to the Plaintiffs that they were "past due mortgage payments for 04/01/2014 and 05/01/2014 have not been

3

received and [they] are past due ," and enclosed a document "entitled 'Avoiding Foreclosure' which provides helpful information on counseling services available." (May 5, 2014 letter, a copy of which is attached as **Exhibit C**);

- issued a letter dated May 12, 2014, representing that the Plaintiffs were "eligible for Homeownership Counseling . . . ." (May 12, 2014 letter, a copy of which is attached as **Exhibit D**); and

- issued a letter dated May 16, 2014, representing that Ditech:

  Would like to provide you the opportunity to meet in person with one of our representatives to discuss options to assist you in bringing your account current. This meeting can also be conducted by telephone if you are unable or choose not to meet in person

  (May 16, 2014 letter, a copy of which is attached as **Exhibit E**)[2].

Mirolinda Duarte subsequently provided documents to Ditech indicating that the Property was an investment Property. Specifically, she produced her tax returns to Ditech, which identified a home address of "13 Columbine Street," copies of leases representing that all three apartments at the Property had been leased, and issued two written requests for modifications representing that:

> I've had more than a hard time keeping up with bills after the loss of my job. The money that I do have isn't even close to paying the bills at where I actually reside.

(Tax Returns, copies of which are attached as **Exhibit F**; Leases, copies of which are attached as **Exhibit G**; Written Requests, copies of which are attached as **Exhibit H**.)

---

[2] This letter may be considered on a Motion to Dismiss because it is undisputedly authentic and related to the facts alleged in the complaint. As a result, the Court need not "accept as true conclusory allegations that are contradicted by undisputedly authentic documents. See generally Barnes v. Windsor Securities LLC, Civil Action No. 13-cv-01878, 2013 WL 4426244 (N.D. Cal. Aug. 8, 2013).

Plaintiffs failed to contact Ditech to participate in the offered meeting or cure their default and, as a result, Fannie Mae (through counsel) scheduled a foreclosure sale for January 26, 2016 and conducted a foreclosure sale on that date. (Compl. at ¶ 39.) By foreclosure deed dated March 14, 2016, Fannie Mae transferred the Property to Ditech. (Compl. at ¶ 40; Foreclosure Deed, a copy of which is attached as **Exhibit I**).

## ARGUMENT

**I.   COUNTS II, III AND IV MUST BE DISMISSED BECAUSE FANNIE MAE COMPLIED WITH THE TERMS OF THE MORTGAGE.**

Fannie Mae, through its servicer, Ditech, made reasonable efforts to conduct a face-to-face interview, which precludes any challenge to the validity of the foreclosure or for monetary damages. The Federal Housing Administration ("FHA"), a division of the U.S. Department of Housing and Urban Development ("HUD"), insured the Mortgage. In exchange for insuring the mortgage, the FHA[3] imposes restriction upon a mortgagee in an effort to mitigate loss.[4] See Mortgage Associates, Inc. v. Smith, Civil Action No. 86C1, 1986 WL 10384 (N.D.Ill Sept. 16, 1986) (These restrictions "insure that financially strapped homeowners will have every opportunity to make informed steps to retain their homes."). Specifically, before accelerating the debt, the mortgagee is required to comply with HUD regulations, including *inter alia* making "a reasonable effort to arrange" a "face to face interview with the mortgagor" after default "at least

---

[3] The FHA provides mortgage insurance for single family loans made by FHA-approved lenders. By issuing insurance, mortgage lenders are induced to make essentially risk free mortgages by being guaranteed against loss in the event of default by the mortgagor. Anderson v. U.S. Dep't of Housing & Urban Development, 701 F.2d. 112, 113-114 (10th Cir. 1983).

[4] There is no private right of action available to a mortgagor for a mortgagee's noncompliance with the HUD regulations. See Roberts v. Cameron-Brown Co., 556 F.2d 356, 360-61 (5th Cir. 1977). Thus, the Plaintiffs would not be entitled to damages for failure to comply with the regulations. While courts in other jurisdictions have recognized that a mortgagor to raise failure to comply with the regulations as a defense to foreclosure if the mortgage incorporated the HUD regulations by reference, Wells Fargo Bank NA v. Cook, 87 Mass.App.Ct. 382 (2015), this is an undecided issue of law in Rhode Island.

30 days before foreclosure is commenced." 24 C.F.R. § 203.604. A "face-to-face meeting is not required if . . . a reasonable effort to arrange a meeting is unsuccessful." Id. By statute a "reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter set to the mortgagor" and "at least one trip to see the mortgagor at the mortgaged property unless . . . it is known that the mortgagor is not residing in the mortgaged property." Id. The failure to adhere to the HUD servicing requirements can be an affirmative defense to foreclosure but does not form the basis of a claim against the mortgagee. Wells Fargo Bank, N.A. v. Favino, No. 1:10 cv 571, 2011 WL 1256771, at *12 (N.D. Ohio Mar. 31, 2011); see also Holloway v. Wells Fargo Bank, N.A., No. 3:12-CV-2184, 2013 WL 1187156 (N.D. Tex. Feb. 26, 2013) ("[HUD] regulations promulgated thereunder deal only with relationship between the mortgagee and the government and give the mortgagor no claim to a duty owed or remedy for failure to follow."); Moses v. Banco Mortgage Co., 778 F.2d 267, 271-72 (5th Cir. 1985) ("neither the Federal Housing Act nor the HUD regulation [at issue] was intended directly to benefit" private plaintiffs.)

In this case, Ditech, on behalf of Fannie Mae, issued a request for a face-to-face meeting to Plaintiffs on May 12, 2014. (May 12, 2014 letter, **Exhibit E**.) It later became "known" to Ditech that the mortgagors were "not residing at mortgage property." Specifically, Mirandolina Duarte produced her tax returns to Ditech, which identified a home address of "13 Columbine Street," copies of leases representing that all three apartments at the Property had been leased, and issued two written requests for modifications representing that:

> I've had more than a hard time keeping up with bills after the loss
> of my job. The money that I do have isn't even close to paying the

bills at where I actually reside.[5]

More fundamentally, Plaintiffs' claims fail because a failure to adhere to the HUD servicing requirements in the regulations can be an affirmative defense to foreclosure but does not form the basis of a claim. Favino, 2011 WL 1256771, at *12.

## II. EVEN IF FANNIE MAE DID NOT COMPLY WITH THE TERMS OF THE MORTGAGE COUNT II, III (IN PART) AND IV STILL FAIL AS A MATTER OF LAW.

### A. The Claims For "Breach Of Duty Of Good Faith And Reasonable Diligence (Count II) And Breach of the Covenant of Good Faith and Fair Dealing (Count III, In Part) Must Be Dismissed.

There is an "implied covenant of good faith and fair dealing between the parties" in "virtually every contract." McNulty v. Chip, 116 A.3d 173, 184 (2015). "The implied covenant of good faith and fair dealing ensures that 'contractual objectives' may be achieved, and that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Id. (internal citations omitted); see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 66 F. Supp. 2d 317, 329 (D.R.I. 1999) aff'd, 217 F.3d 8 (1st Cir. 2000). Since the implied covenant relates only to a party's performance of contractual obligations, in the absence of a contract, there cannot be a breach of the implied covenant of faith and fair dealing. Bacou-Dalloz USA, Inc. v. Cont'l Polymers, Inc., No. CA 00-404-T, 2005 WL 615752, at *7 (D.R.I. Mar. 4, 2005) (recognizing that without a contract, there can be no contractually implied covenant of good faith and fair dealing); see also Gifford v. Burke, No. 08 MISC 390774 AHS, 2011 WL 607108, at *5 (Mass. Land Ct. Feb. 18, 2011) ("When no contract exists . . . there cannot be a breach of the implied covenant of good faith and

---

[5] These documents may be considered on a motion to dismiss because they are undisputedly authentic and originated by and within the possession of the Plaintiffs. See Watterson v. Page, 987 F.2d 1, 3-4 (1st 1993) ("the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated "where plaintiff has actual notice" of the documents.) .

7

fair dealing, as the claim and the covenant relate only to performance of the obligation."). Consistent with this principle, the Rhode Island Supreme Court has held "that a claim for breach of the implied covenant of good faith and fair dealing does not create an independent cause of action separate and apart from a claim for breach of contract." McNulty, 116 A.3d at 184; see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 66 F. Supp. 2d at 329 ("The Rhode Island Supreme Court . . . has held that a breach of the duty of good faith and fair dealing gives rise only to a breach of contract claim, not to a tortious cause of action.").

Plaintiffs claim that "by breaching the terms of the mortgage contracts" and foreclosing in violation of the regulations, Defendants violated the "duty of good faith and fair dealing." (Complaint at ¶¶ 94-95.) Plaintiffs fail to allege, however, from where such a duty arose. Presumably, Plaintiffs refer to the implied duty of good faith and fair dealing in the Mortgage contract. However, Plaintiffs cannot assert a stand-alone claim for breach of the implied covenant of good faith and fair dealing as a matter of law because there is no separate cause of action under Rhode Island law. See McNulty, 116 A.3d at 184 (dismissing claim for breach of the implied covenant of good faith and fair dealing because there is no separate cause of action for such a claim ). Accordingly, Count III must be dismissed. To the extent Plaintiffs claim that there was some sort of duty owed under the regulation, the claim must be dismissed because, as discussed above, the duty of good faith is an implied contractual obligation, not an obligation implied by regulation.

### B. The DTPA Claim Fails As A Matter Of Law Because The Statute Does Not Apply To A Mortgage Loan And Defendants Are Exempt From The Statute.

R.I. Gen. Laws § 6-13.1-2 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." The DTPA allows "[a]ny person who **purchased or leases goods or services** primarily for personal, family, or

household purposes and . . . suffers any ascertainable loss of money or property, real or personal as the result of the use or employment by another person of a method, act, or practice declared unlawful by § 6-13.1-2" to "bring an action." R.I.G.L. § 6-13.1-5.2 (emphasis added). Although "goods" and "services" are not defined in the statute, Black's Law Dictionary defines "goods" as "[t]angible or movable personal property other than money," while a "service" is defined as "labor performed in the interest or under the direct of others." See Black's Law Dictionary (10th ed. 2014).

Rhode Island courts interpreting the phrase "goods and services" under R.I.G.L. § 6-13.1-5.2 have concluded that the DTPA does not apply to mortgage loan because a mortgage loan is "not a purchase of lease of goods and services." Miller v. Wells Fargo Bank, N.A., No. KC-11-0060, 2015 WL 1515942, at *6-8 (R.I. Super. Ct. Mar. 30, 2015) (Rubine, J.) (dismissing claim against mortgage servicer under DTPA for actions taken in connection with borrower's request for a loan modification); see also DeSimone v. Warwick Savings and Loan Ass'n, No. 80-822, 1981 WL 386509, at * 1 (R.I. Super. Ct. Oct. 20, 1981) (Needham, J.) (dismissing DTPA claim against bank that increased interest rates on two mortgage loans because "[a] mortgage loan is not a purchase or lease of goods or services and hence the subject matter of the statute is inapplicable"). As a result, courts have dismissed DTPA claims against a loan servicer related to certain actions taken in connection with servicing the loan because such services are merely incidental to the mortgage loan and the mortgagor does not pay for or lease these services. Id.

Similarly here, Plaintiffs' action involves the alleged failure of Defendants to meet with Plaintiffs and negotiate a repayment of the amount due on their mortgage loan. As discussed above, a mortgage loan is not a "good" or "service" under the DTPA. Moreover, nowhere do

Plaintiffs allege that they paid for or leased Fannie Mae or Ditech's services.  As a result, the DTPA claim must be dismissed.

Even if there were a cause of action under the DTPA for "deceptive" conduct in connection with a loan modification, Ditech and Fannie Mae are exempt under R.I.G.L. § 6-13.1-4. "Private actions . . . are precluded [under the DTPA] when the complained of activity is subject to regulation by a government agency." Chavers v. Fleet Bank (RI), N.A., 844 A.2d 666, 670 (R.I. 2004).  The exemption contained in R.I.G.L. § 6-13.1-4 provides that "[n]othing in this chapter shall apply to actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States."  Thus, by its plain language, "the Legislature clearly exempted from the [DTPA] all those activities and businesses which are subject to monitoring by state or federal regulatory bodies or officers." State v. Piedmont Funding Corp., 119 R.I. 695, 699 (1978).

As discussed above, the FHA and HUD have imposed certain restrictions and regulations on Defendants requiring Defendants to comply with 24 C.F.R. § 203.604 and make "a reasonable effort to arrange" a "face to face interview with the mortgagor" after default "at least 30 days before foreclosure is commenced."  Since these activities (which are specifically complained about in this action) are regulated by FHA and HUD, the exemption under the DTPA applies and the claim must be dismissed.[6]

---

[6] Moreover, Fannie Mae is a government-sponsored enterprise ("GSE") regulated and supervised by the Federal Housing Finance Agency ("FHFA"), which was created as "the safety, soundness, and housing missing regulator" of Fannie Mae. Suero v. Fed. Home Loan Mortgage Corp., No. 13-13014-JGD, 2015 WL 4919999, at *1-3 (D. Mass. Aug. 18, 2015); see also 12 U.S.C. § 4501, et seq.  FHFA is also the conservator for Fannie Mae. Id. at *1-3, 6; see also 12 U.S.C. § 4501, et seq.  For this reason, Fannie Mae is also exempt from the DTPA.

ME1 24884594v.1

### III. NO POWER OF ATTORNEY WAS NECESSARY AND, THUS, COUNT I SHOULD BE DISMISSED.

Neither Fannie Mae nor Ditech conveyed the Property by Power of Attorney and, therefore, the claim for declaratory relief fails as a matter of law. Rhode Island General Laws, § 34-11-34 captioned "Conveyances executed by attorney—Recording of power" provides in relevant part that:

> Any **conveyance executed by attorney** shall be as valid as if executed by the grantor himself, providing that a power of attorney be given by such grantor for this purpose; which power and the deed executed by the attorney hereunder shall be signed acknowledged, delivered and recorded with like formalities prescribed by law concerning deed from grantors in person

Id.

In this case, the Plaintiffs have neither alleged nor identified a "conveyance" that was executed by an "attorney." Instead, they ignore the plain language of the statute and claim that

- "Fannie Mae and Ditech" were not the "note-holder or 'Lender'"
- "Fannie Mae and Ditech" lacked "specific authority or a power of attorney from the note-holder "Lender" Ginnie Mae;" and
- "Without authority from Ginne Mae" the Defendants' lacked authority to exercise the statutory power of sale in the Mortgage." (Comp. ¶¶ 72-75).

Even if these allegations were true, R.I.G.L. § 34-11-34 is still inapplicable. The exercise of the statutory power of sale is not a conveyance and was not conducted by an attorney. Indeed, the only "conveyance" by "deed" identified in the complaint is the Foreclosure Deed, which was not signed by an attorney but by Fannie Mae.

More fundamentally, by signing the Mortgage, the Plaintiffs granted MERS and subsequently its assignee Fannie Mae the statutory power of sale. See Bucci v. Lehman Brothers

Bank, FSB, 68 A.3d 1069, 1087 (2013) ("the right to exercise the power of sale in a mortgage is derived from contract not from statute."). Through the Mortgage, Fannie Mae had the contractual right to foreclose without any approval or authorization from a third party.

## CONCLUSION

WHEREFORE, for the above reasons, Ditech and Fannie Mae request that the Court dismiss the Complaint with prejudice.

> Respectfully submitted,
> DITECH FINANCIAL, LLC and
> FEDERAL NATIONAL MORTGAGE
> ASSOCIATION,
> By their attorneys,
>
> */s/ Mark P. Dolan, Jr.*_____
> Mark P. Dolan, Esq. (#3280)
> Mark P. Dolan, Jr. Esq. (#9277)
> RICE, DOLAN & KERSHAW
> 72 Pine Street – Suite 300
> Providence, RI 02903
> Phone: (401) 272-8800
> Fax: (401) 421-7218
> mdolan@ricedolan.com
> mdolanjr@ricedolan.comn

Dated:  May 22, 2017

ME1 24884594v.1